# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3803

DEREK CASE,

*Plaintiff-Appellant*,

*v.*

MICHAEL MILEWSKI, MICHAEL HOYLE,
and JOHN KNOWLTON,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 1914—**Paul E. Plunkett**, *Judge*.

ARGUED SEPTEMBER 17, 2002—DECIDED APRIL 25, 2003

Before COFFEY, EVANS, and WILLIAMS, *Circuit Judges*.

COFFEY, *Circuit Judge*. Derek Case brought this suit
against three members of the Great Lakes Naval Train-
ing Center police force—officers Milewski, Hoyle, and
Knowlton—alleging that the officers violated his Fourth
and Fifth Amendment rights by seizing him without
probable cause and depriving him of freedom of movement.
Case argues that he may sue the officers pursuant to either
42 U.S.C. § 1983 or as part of an action authorized by
*Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The
district court granted the officers' motion to dismiss on
grounds that Case's Amended Complaint failed to state
a cause of action, from which Case appeals. We affirm.

## I. BACKGROUND

On review, this court must accept as true all well-plead factual allegations of the complaint, drawing all reasonable inferences in petitioner's favor. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). Case alleges that on June 15, 1999, he loaded his rottweiler and his golf clubs into his car and drove to Willow Glen Golf Course with the intent of playing a round of golf. The course is located on the grounds of the Great Lakes Naval Base in Illinois. The manager informed Case that he was not properly dressed to play because his shirt lacked a collar, instigating a dispute between Case and the manager concerning the Golf Course's dress code. Eventually, the Great Lakes Police were called and officers Knowlton, Hoyle, and Milewski responded. At the officers' request, Case left the golf shop and returned to his car with the intention of taking his dog, which had been left in his car, for a walk.

Case retrieved his dog and walked to Buckley Road, a public state highway immediately adjacent to the golf course. While Case stood waiting for a break in traffic, the officers approached Case and asked him for identification. Case responded that he did not have his identification with him, but Case gave the officers his name and birth date. When Case asked to leave the officers replied, "sure, but you have to take your car or we will tow it." Case responded that his car was not illegally parked and that he just wanted to take a walk. Officer Milewski then cautioned, "you can't go in the street, you're a traffic hazard" and further suggested that Case should return to his car.

When Case returned to his car and got in, Officer Milewski reminded Case that he could not drive because he did not have his license with him. When Case responded that he would search for his license in the car, one of

the officers parked a squad car behind Case's vehicle to block him in. Case left the car with his rottweiler and walked back to the roadway, off the grounds of the naval base. Officers Knowlton and Hoyle walked alongside Case as he walked east on the road's median while Officer Milewski followed in his squad car.

When Case attempted to cross the street and walk away from the situation Officer Hoyle blocked his path. Officer Hoyle took out his pepper spray and held it in his right hand. In reply to Case's inquiry about the pepper spray, Officer Hoyle elbowed Case and informed him to return to the parking lot. Case insisted that he had done nothing wrong, that he was not a threat to the officers or others, and that he just wanted to walk his dog, but Officer Hoyle shoved Case at least twice and again demanded that Case return to the parking lot. When Case told Officer Hoyle to stop touching him, Officer Milewski shoved Case from behind into Officer Hoyle, prompting Hoyle to pepper spray Case. Case fell to the ground. When Case failed to physically yield to the officers so that handcuffs could be placed on him, a struggle ensued in which Case was struck. After his arrest Case was charged under Illinois law for disorderly conduct, assault, and resisting arrest. Although the disorderly conduct and assault charges were subsequently dismissed, Case plead guilty to resisting arrest.

## II.  DISCUSSION

### A.  Case's § 1983 Claim

Case filed a complaint under 42 U.S.C. § 1983 alleging that the officers violated his rights under the Fourth and Fifth Amendments to the United States Constitution. To state a claim under § 1983 a plaintiff must allege two elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the

activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985). The district court dismissed Case's § 1983 claim, pursuant to Rule 12(b)(6), finding that Case failed to state a claim that the officers were acting under color of state law. This court reviews a 12(b)(6) dismissal *de novo*. *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

This court has recognized two circumstances in which defendants may be found to act under color of state law. The first is when the state has cloaked the defendants in some degree of authority—normally through employment or some other agency relationship. *See Yang*, 37 F.3d at 284 (finding that Chicago police officers were acting under color of state law when "[t]hey were on duty, wearing Chicago police uniforms, driving a marked squad car and were investigating a crime"); *Pickrel*, 45 F.3d at 1118 (finding an off-duty Springfield, Illinois police officer could have been acting under color of state law because he was wearing his police uniform and displaying his badge); *Easter House v. Felder*, 910 F.3d 1387, 1394 (7th Cir. 1990) (en banc) (recognizing that, in processing a private adoption agency's license application, an administrative agency acts under color of state law); *but see Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001) (noting that "'not every action by a state official or employee is deemed as occurring 'under color' of state law'. . . . [A]cts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." (quoting *Hughes v.*

*Meyer,* 880 F.2d 967, 971 (7th Cir. 1989))); *Gibson v. City of Chicago*, 910 F.2d 1510, 1516-17 (7th Cir. 1990) (same).

The second circumstance in which we have recognized that defendants may be found to act under color of state law is when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 152 (1970); *Moore*, 754 F.2d at 1352. "In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights." *Moore*, 754 F.2d at 1352; *see also Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (same). Although an action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1346 (2d Cir. 1972) (on remand), it is assumed that a § 1983 action can lie against federal employees—as it can against private individuals—if they conspire or act in concert with state officials to deprive a person of her civil rights under color of state law. *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995).

Case argues that the officers were either cloaked in state authority or conspired with the state to violate his civil rights. To establish a connection between the defendants and the state, Case points to the citations issued to him after his encounter with the defendants. The citations concern exclusively state criminal offenses—disorderly conduct, assault, and resisting a peace officer. The citations are prepared on state forms, list the Circuit Court of

Lake County, Illinois as the venue in which the offenses were to be heard, and are signed by Officer Milewski. In addition, Case also reminds this court that he was not on federal property when the offenses allegedly occurred.

Case's allegations, however, fail to meet either of the § 1983 tests for "under color of state law." Nowhere in the complaint does Case allege that the State of Illinois cloaked the federal officers in any degree of state authority. Nor do the facts presented in the Complaint support such a conclusion. To the contrary, the facts plead in Case's Amended Complaint, by which this court is bound, establish that the defendants are Great Lakes police officers. Great Lakes is not a state, county, or municipality, but a federal naval base patrolled by federal officers.

Similarly, Case also fails to allege that there was a conspiracy between state officials and the defendants to deprive Case of his civil rights. Nowhere in the Complaint does Case demonstrate that state officials and the defendants reached an understanding to deny Case his constitutional rights. Instead, the facts in the Complaint show that the defendants' actions were taken under color of federal law; federal officers appeared at a federal property in response to a complaint by a federal employee about an allegedly disorderly person. After the federal officers arrived at the golf course, their subsequent conduct reflected their federally-assigned duty to patrol federal property.

Case's argument that the defendants' ceased to be operating under color of federal law once they left the federally owned golf course is without merit. After responding to the golf course manager's call for intervention, all subsequent interaction the officers had with Case was an investigation of an incident on federal property. Whether in continuing their investigation the federal officers violated Case's civil rights, is not a question under § 1983.

Rather, the officers' conduct under color of federal law is a question relevant to Case's *Bivens* claims.

### B. *Case's* Bivens *Claims*

Case argues that the officers violated the Fourth Amendment because they unconstitutionally seized him and violated the Fifth Amendment by infringing on his liberty, contrary to his procedural due process rights, and harassing him, contrary to his substantive due process rights. This court previously explained that "a seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause." *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984); *see also Albright v. Oliver*, 510 U.S. 266, 275 (holding that substantive due process is not a basis for challenging the lawfulness of arrest). Thus, if this court upholds Case's arrest when it is reviewed under Fourth Amendment rules, Case will not succeed by recasting his challenge in the language of due process. *McKinney*, 726 F.2d at 1187.

The *Bivens* Court held that a violation of the Fourth Amendment by a federal agent acting under color of federal authority gives rise to a cause of action for damages flowing from the unconstitutional conduct. *Bivens,* 403 U.S. at 389. Case argues that he is entitled to damages because he was arrested without probable cause when he was pepper sprayed. Case claims that at the time he was sprayed, he was merely attempting to walk away from the officers.

Because Case plead guilty to resisting arrest, however, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render

a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87. This court further held that, in addition to § 1983 claims, *Heck* applies to *Bivens* claims. *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997). If this court were to allow Case to recover damages because he was arrested without probable cause, Case's conviction would be rendered invalid because, under Illinois law, so long as there is physical resistance an officer has probable cause to arrest someone who resists an arrest attempt. *Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995). Thus, because Case's resisting arrest conviction has not been called into question, *Heck* bars Case's Fourth Amendment claim. In upholding Case's arrest under Fourth Amendment standards, we further conclude that his due process arguments fail. *See McKinney*, 726 F.2d at 1187.

Accordingly, we AFFIRM the decision of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—4-25-03